OPINION OF THE COURT
Daniel Markewich, J.
The defendant stands charged with disorderly conduct in violation of Penal Law § 240.20 (7) for allegedly urinating in public. At the end of the People’s case, and again at the *312 conclusion of all the evidence presented at this bench trial, the court reserved decision on the defendant’s motions for a trial order of dismissal. As well, the court deferred the rendering of a verdict pending further consideration of the facts and the applicable law.
The material issues herein are whether the defendant by his conduct committed an act that served "no legitimate purpose” and that created "a physically offensive condition”, and whether he thereby recklessly created "a substantial and unjustifiable risk” of "public inconvenience, annoyance or alarm.” (Penal Law § 240.20 [7]; § 15.05 [3].) Legal research has disclosed only one case holding public urination to constitute disorderly conduct (State v Cherry, 185 Neb 103, 105, 173 NW2d 887, 888 [1970]). While that decision is persuasive in finding that "Defendant’s conduct, depending upon the circumstances, would be embraced within the general term 'indecent behavior’ and could, by shocking the public sense of morality, be a disorderly act which in our society might tend to disturb the peace and quiet of the city”, it must also be noted that the Nebraska court was called upon to construe a vastly different ordinance and enabling statute that gave practically no relevant content beyond "indecent or disorderly conduct” to the definition of the offense. See also, City of Pasco v Dixson (81 Wash 2d 510, 503 P2d 76 [1972]), where that portion of a city ordinance specifically barring "urinating in public view” as disorderly conduct was implicitly approved in dictum. Plainly, a definition so specific has no bearing on the present case and, in any event, the conviction, for violating a different portion of the ordinance, was reversed.
People v Carter (13 AD2d 652 [1st Dept 1961]) also suggests that public urination may be disorderly conduct. Although the memorandum decision of the Appellate Division in that case appears to be purposely obscure as to the underlying facts, the respondent’s brief reveals that the defendant-appellant had been charged with indecent exposure under former Penal Law § 1140 and convicted of disorderly conduct under former Penal Law § 722 (1) and (2) as a lesser included offense for allegedly exposing his private parts and urinating in a classroom where he had been taking an examination. According to the respondent’s brief, the defendant-appellant testified in his defense at trial that, having unsuccessfully sought to get permission from the classroom monitors to go to the toilet, "he was compelled to succumb to the urge to urinate” and did so in his pants while still in the classroom.
*313 The First Department reversed the conviction and dismissed the information “on the ground that there is a reasonable doubt whether defendant’s conduct resulted from a momentary and unanticipatable lack of physical control.” (People v Carter, supra, at 653.) In view of the reversal as well as the differences in definition between former Penal Law §722 (1) and (2) and present Penal Law § 240.20 (7), there is no clear New York precedent as to whether an act of public urination can violate section 240.20 (7). It must be observed, however, that according to the Commission Staff Notes to the Proposed New York Penal Law (Proposed NY Penal Law § 250.05, at 389 [1964]), Penal Law § 240.20 (7) “is a catchall provision, along the lines of existing Penal Law § 722 (2)”, the very offense as to which Carter’s conviction might have been affirmed but for his defense of "lack of physical control.” This circumstance would certainly suggest that Penal Law § 240.20 (7) may be found to encompass public urination.
The court has no doubt that Penal Law § 240.20 (7) is constitutional on its face, for the same reasons as those set forth with respect to section 240.20 (2) in People v Bakolas (59 NY2d 51 [1983]). People v Mehdi (29 NY2d 824 [1971]), in which the issue of the constitutionality of subdivision (7) as applied was deferred, raised First Amendment considerations not present in this case. Moreover, the somewhat similar language of Penal Law § 240.25 (5) has implicitly been upheld in People v Wood (59 NY2d 811 [1983]), and Matter of Rogers v Rogers (161 AD2d 766 [2d Dept 1990]).
It should be noted that the Village of South Nyack has no ordinance forbidding public urination as such, albeit such a provision, "governing the safety, health and well-being” of those within the village, would certainly be enforceable pursuant to People v New York Trap Rock Corp. (57 NY2d 371, 377 [1982]), Clark v Community for Creative Non-Violence (468 US 288, 298, n 7 [1984]), and People v Hollman (68 NY2d 202, 206 [1986]). (See also, City of Pasco v Dixson, supra.) Pursuant to these cases, the court has no doubt that the State of New York could also embrace public urination within the statutory definition of disorderly conduct (cf., People v Carter, 13 AD2d 652, supra). The question is whether, by the language of Penal Law § 240.20 (7), the Legislature has done so.
The court emphasizes that a defendant cannot ordinarily be found guilty of disorderly conduct merely upon proof that he urinated in a public place. A persuasive defense of urgency, *314 necessity or incontinence, at least when coupled with the unavailability of nearby restroom facilities and with reasonable efforts by the defendant to conceal his act, would negative some or all of the elements required for conviction under Penal Law § 240.20 (7). (People v Carter, supra; Penal Law § 35.05 [2].) Of the foregoing factors, all but concealment would seem also to constitute valid defenses to a charge of public urination under a local ordinance. Thus, neither Penal Law § 240.20 (7) nor a public urination ordinance can properly be used as a "dragnet” to rid the streets of those whose lifestyle the community may regard as undesirable.
Section 240.20 (7) was not improperly used in the present case. [The factual discussion has been omitted for purposes of publication.] The court concludes beyond a reasonable doubt that the defendant urinated in public and that his act of public urination served no legitimate purpose, since he had left a tavern where there was an available men’s room only a few moments before and he was still less than a block away, yet he chose to urinate in public view under a street lamp on a main thoroughfare without even making an effort to return to the tavern or to conceal himself.
The most difficult issue of law in the present case is whether by his conduct the defendant created the "physically offensive condition” that Penal Law § 240.20 (7) requires for conviction. According to Black’s Law Dictionary (265 [5th ed]), a "condition” as relevantly defined is nothing more than a "state or situation.” It is no defense to a charge of Penal Law § 240.20 (7) that, as here, the condition created by the defendant may have had only transitory public impact. As the 1964 Commission Staff Notes demonstrate (id., § 250.25, at 391): "The offense of ’nuisance,’ in some phases at least, resembles disorderly conduct”, the difference being that disorderly conduct, a violation, generally "relates to a specific act or acts of brief duration” while criminal nuisance, a class B misdemeanor, involves "a continuing condition.” At the very least, the defendant herein by his act created a condition "of brief duration”. The issue is whether that condition was "physically offensive” within the meaning of the disorderly conduct statute.
Penal Law § 240.20 (7) is derived from, and nearly identical to, section 250.2 (1) (c) of the Model Penal Code. (Commn Staff Notes, id., § 250.05, at 389.) The few reported cases that have construed subdivision (7) have held that it encompassed "situ *315 ations such as throwing fireworks into a crowd or loosening noxious materials within a confined area such as a theater” (Matter of Seymour v Seymour, 56 Misc 2d 546, 548 [Fam Ct, Tioga County 1968]), and " 'smoke, gases and waste’ ” (Hudson Val. Light Weight Aggregate Corp. v Schovel, 64 Misc 2d 814, 815 [Sup Ct, Ulster County 1970]). The 1985 Commentaries to the Model Penal Code explain that the words "hazardous or physically offensive condition”, employed in the Model Penal Code as well as Penal Law § 240.20 (7), were intended to reach such activities as " 'stink bombs’, strewing garbage, nails, or noxious substances in public passages, turning off lights in an occupied theater,” but also "an endless variety of public annoyances that mischief can conceive.” As with other public nuisances, the statutory prohibition is expressly limited to "acts that 'serve no legitimate purpose of the actor.’ ” (ALI Model Penal Code and Commentaries, Final Draft, at 347 [1985]; see also, 1961 Commentaries, Tentative Draft No. 13, at 7-8 [1961].)
The 1964 Commission Staff Notes (id., § 250.05, at 389) likewise observe that: "Subdivision [7] is a catchall provision * * * which is necessary because of the impossibility of compiling a comprehensive list of acts properly punishable as disorderly conduct”. According to ALI Proceedings 181 (1961), the term "physically offensive,” used in both the Model Penal Code and Penal Law § 240.20 (7), is "meant to distinguish between olfactory assault — we don’t want stink bombs thrown either — and conduct which is offensive by virtue of the ideas which the actor may be putting forward.” In the present case, there was no claim that the defendant’s conduct constituted even symbolic speech. In any event, such a form of expression could be barred pursuant to People v Hollman (68 NY2d 202, supra), and Clark v Community for Creative Non-Violence (468 US 288, supra).
It is obvious that the term "olfactory assault” was used by ALI’s reporter only as a graphic example of impact on the senses and that it was not the intention of the drafters of the Model Penal Code or Penal Law § 240.20 (7) to limit infractions to acts "physically offensive” to the sense of smell; nor is the statutory language so confined. The court therefore concludes that public urination, which is offensive to the sense of sight and can also be offensive to the sense of smell, constitutes the defendant’s creation of a "physically offensive condition” where, as here, it is done literally and figuratively in the public glare, without legitimate purpose or necessity, and in *316 the total absence of any attempt to conceal the act from public view.
The court finds beyond a reasonable doubt, as Penal Law § 240.20 (7) and § 15.05 (3) require in the circumstances, that the defendant was aware of and consciously disregarded a substantial and unjustifiable risk that the public would be annoyed and alarmed by his physically offensive act. The court also finds that the risk consciously disregarded by the defendant was of such nature and degree that his disregard thereof constituted a gross deviation from the standard of conduct that a reasonable person would have observed in the situation, since such a person would either have returned to the nearby tavern to urinate or at least would have attempted to shield his act from public view.
The absence of proof that anyone other than Officer Powers and the defendant’s companion observed his act or that anyone was in fact offended thereby is legally immaterial in these circumstances. It is sufficient that the defendant created a condition of a kind that was physically offensive to the public (People v Brown, 137 Misc 2d 172 [Oswego City Ct 1987]), and that carried with it the substantial and unjustifiable risk of public annoyance and alarm (People v Todaro, 26 NY2d 325 [1970]). In the present case, the issue is solely "the objective standard of public disturbance”, i.e., whether "a reasonable person, under the circumstances, would not tolerate” the conduct. It is the annoyance of "a neighborhood or the public”, or the risk thereof, that must be shown, and was sufficiently demonstrated here. (People v Bakolas, supra, 59 NY2d, at 53-54.)
Accordingly, the defendant is found guilty of disorderly conduct in violation of Penal Law § 240.20 (7), and his motions for a trial order of dismissal are denied.