OPINION OF THE COURT
Michael L. Broderick, J.
The defense has brought this motion to dismiss the accusatory instrument filed against defendant Robert Schenck pursuant to CPL 100.40 and 170.35 on the grounds that the instrument is facially insufficient. The defense also moves to dismiss the information on the basis that the charge brought against the defendant was unconstitutionally applied so as to abridge his rights of free speech and assembly, and that it also violated his right to equal protection of the laws.
With respect to the argument addressing the sufficiency of the information, the defense claims that the instrument is defective on several grounds.
First, the defense claims that the information is insufficient as a matter of law in that it recites that the defendant did "hold up an apparent aborted fetus.” The defense argues that this allegation is insufficient as a matter of law because it is analogous to calling a controlled substance suspected contraband. (Citing People v Dumas, 68 NY2d 729 [1986].)
In Dumas (supra), the Court of Appeals held that the information lacked evidentiary facts showing the basis for concluding that the substance sold was actually marihuana. However, the Court also stated that the information would have been sufficient if it contained an "allegation that the police officer [was] an expert in identifying marihuana [or] any allegation that the defendant represented the substance as being marihuana. ” (Supra, at 731; emphasis added.)
In the present case, the supporting deposition of Pamela Eger recites that "Rev. Robert Schenck did take what he said to be a live fetus and did place it in my face” (emphasis added).
Based upon People v Dumas (supra), the court finds that the allegation that the defendant represented the object as a live fetus is sufficient to satisfy the requirements of CPL 100.15 and 100.40.
The defense also argues that the supporting deposition of the complaining witness is insufficient as she did not have personal knowledge. She states that the defendant did take "what he said to be a live fetus.” (Emphasis added.) However, *939 admissions of a defendant are nonhearsay allegations so that the facts admitted in such statement may satisfy, if legally sufficient, the requirements of CPL 100.15 and 100.40. (People v Mauro, 147 Misc 2d 381 [Crim Ct, NY County 1990].)
Therefore, the defendant’s alleged statement that the object was a fetus is a nonhearsay allegation that may be used to support the elements of the offense charged in the information.
The defense also contends that the information fails to contain factual allegations to show that the defendant’s actions were "physically offensive.” However, the information does allege that the object, an apparent fetus dripping with formaldehyde, was physically offensive when thrust close to the faces of the officers and other individuals and served no legitimate purpose. The supporting deposition from Pamela Eger states that she was physically offended by seeing the fetus.
The court finds that these allegations satisfy the requirements of CPL 100.15 and 100.40. The proof as to whether this action was offensive or annoying is an issue of fact for trial.
The defense also claims that the information is insufficient due to the conclusory allegation that the alleged aborted child was "close” to the face of bystanders. The defense argues that the People have not specified what the word "close” means in terms of feet or inches.
Again, this is an issue to be resolved at trial. The disorderly conduct statute does not contain a requirement that the alleged thrusting of the object must fall within a specific range from the public in order to establish public annoyance, inconvenience, or alarm or risk thereof.
The law provides that an objective standard is to be used in determining public inconvenience, annoyance and alarm. (People v Baker, 150 Misc 2d 713 [Mount Vernon City Ct 1991].)
If a reasonable person under the circumstances would be offended, annoyed or alarmed by the defendant’s conduct, then the information is sufficient. (People v Bakolas, 59 NY2d 51 [1983].) Whether or not the defendant did in fact offend, annoy or alarm the public is an issue to be decided at trial.
Finally, the defense argues that the information does not contain factual allegations to show that the defendant’s actions "served no legitimate purpose.” The court finds that this element is satisfied by the allegations that the defendant held up "an apparent aborted fetus near the faces of various *940 individuals at times close to the face of officers and other individuals”.
Therefore, the court holds that the accusatory instrument is facially sufficient pursuant to the requirements of CPL 100.15 and 100.40. The defendant’s motion to dismiss pursuant to CPL 170.35 is hereby denied.
The defense also moves to dismiss the accusatory instrument against the defendant pursuant to CPL 170.35 (1) (c) by claiming that the charge brought against the defendant was unconstitutionally applied in that it acted to abridge his rights of free speech and assembly under the First and Fourteenth Amendments of the United States Constitution and article I, §§ 8 and 9 of the New York State Constitution.
Specifically, the defense argues that the defendant "engaged in classic free speech activity. He allegedly raised an aborted twenty-three (23) week old child so that [the child] could be viewed by the complainant and her cohorts who advocate for abortion rights * * * Showing them the flesh and blood consequences of what they advocate.”
In support of this argument the defense states that the First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide open”. (New York Times Co. v Sullivan, 376 US 254, 270 [1964].)
Additionally, the defense relies on the United States Supreme Court’s decision in Erznoznik v City of Jacksonville (422 US 205, 210-211 [1975]), where it was held that: "[T]he Constitution does not permit government to decide which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling listener or viewer. Rather * * * the burden normally falls upon the viewer to 'avoid further bombardment of [his] sensibilities simply by averting [his] eyes.’ ”
The court notes that there is a competing interest between the government’s need to regulate the use of public areas to assure the safety and convenience of the citizenry, and the constitutional right of free speech. (Cox v Louisiana, 379 US 536, 554 [1965].) Any limitation of free speech on public property must be sharply restricted to those regulations necessary to serve a compelling State interest. (Grayned v City of Rockford, 408 US 104, 115 [1972].) Yet, the First Amendment does not guarantee an absolute right to anyone to express his or her view "any place, at any time, and in any way”. (Olivieri *941 v Ward, 801 F2d 602, 605 [2d Cir 1986], citing Heffron v International Socy. For Krishna Consciousness, 452 US 640, 647 [1981]; Adderley v Florida, 385 US 39, 47-48 [1966].)
"The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy.” (Cox v Louisiana, supra, at 554.) Reasonable " 'time, place and manner’ ” regulations may be necessary to further significant governmental interests and are allowed. (Grayned v City of Rockford, 408 US, supra, at 115.) These restrictions are also upheld under the New York State Constitution. The Court of Appeals has held that "protected speech may be restricted to time, place and manner.” (People v Bakolas, 59 NY2d, supra, at 55.)
The court holds that the disorderly conduct statute (Penal Law § 240.20 [7]) is not unconstitutionally applied. While the First Amendment does protect expressive conduct, a regulation of that conduct is not unconstitutional when said regulation is not an attempt to suppress the communication. (United States v Eichman, 496 US 310 [1990].) The United States Supreme Court has held that: " '[T]he only First Amendment analysis applicable to laws that do not directly or indirectly impede speech is the threshold inquiry of whether the purpose of the law is to suppress communication. If not, that is the end of the matter so far as First Amendment guarantees are covered’ ”. (Barnes v Glen Theatre, 501 US —, —, 111 S Ct 2456, 2467 [1991].)
New York cases show that the constitutional guarantee of free speech covers the substance rather than the form of communication, but if the substance is being conveyed by a form violative of the public health, safety or well-being, then the First Amendment protection is subordinated to the general public interest. (People v Mehdi, 29 NY2d 824, 827 [1971], citing People v Radich, 26 NY2d 114, 118-119, affd 401 US 531, reh denied 402 US 989; People v Stover, 12 NY2d 462, appeal dismissed 375 US 42.)
Therefore, the disorderly conduct statute is not unconstitutionally applied since it does not attempt to restrict the substance of the speech, but instead attempts to protect the health, safety or well-being of the public from a form of communication that may violate these interests.
*942 The defense also contends that the defendant’s right to equal protection of the law was violated by his arrest. Specifically, the defense claims that since people who were expressing viewpoints that were different from the defendant were not arrested when he was arrested, he was singled out and discriminated against.
However, the court concurs with the People’s response to this claim. The People state that the persons expressing other viewpoints were using methods protected by the First Amendment, namely by voicing their opinions and distributing literature. Since these activities were different from the actions allegedly taken by the defendant, the defendant cannot claim that he was singled out and denied equal protection of the law.
Therefore the court also denies the defense motion on this issue.
The remaining issue to be decided is whether Penal Law § 240.20 (7) is unconstitutional on its face as being overly vague. Specifically, at issue is whether the term "physically offensive condition” as contained in the statute is overly vague (emphasis added).
The statute in question provides that:
"A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof * * *
"He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose.” (Penal Law § 240.20 [7]; emphasis added.)
First, the defendant has the heavy burden of overcoming the presumption of constitutionality that cloaks every duly enacted statute. (People v Pagnotta, 25 NY2d 333, 337 [1969]; Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358, 370 [1978].)
The constitutional requisite that a statute be sufficiently informative on its face serves a twofold purpose which is to alert all persons that their conduct must conform to certain standards and to guide the judiciary and others who must administer the law. (People v Illardo, 48 NY2d 408, 413 [1979].) Further, arbitrary and discriminatory administration by law enforcement officials is a grave threat posed potentially by any vague law. (Supra, at 414.)
This reasoning was applied by the United States Supreme Court in analyzing the constitutionality of the obscenity stat *943 utes. The Court held that: "Many decisions have recognized that these terms of obscenity statutes are not precise * * * lack of precision is not itself offensive to the requirements of due process” as long as the language puts a reasonable person on notice of what conduct is proscribed. (Roth v United States, 354 US 476, 491 [1957].)
The question to be resolved is whether the phrase "physically offensive condition” gives a person of ordinary intelligence fair notice that his or her conduct is forbidden.
It has been held that Penal Law § 240.20 (7) does not require proof that anyone was actually physically offended; it is enough that a condition of a kind that was physically offensive to the public was created. (People v Brown, 137 Misc 2d 172 [Oswego City Ct 1987].) Therefore, the issue is " 'the objective standard of public disturbance’, i.e., whether 'a reasonable person under the circumstances, would not tolerate’ the conduct.” (People v Cooke, 152 Misc 2d 311, 316 [Nyack Just Ct, Rockland County 1991].)
Other courts have interpreted the statute defining disorderly conduct as including creation of hazardous or physically offensive conditions (to contemplate) "not acts directed at an individual but rather situations such as throwing fireworks into a crowd or loosing noxious chemicals within a confined area such as a theatre” (Matter of Seymour v Seymour, 56 Misc 2d 546, 548 [Fam Ct, Tioga County 1968]), and "smoke gases and waste.” (Hudson Val. Light Weight Aggregate Corp. v Schovel, 64 Misc 2d 814 [Sup Ct, Ulster County 1970].)
According to Black’s Law Dictionary 265 (5th ed 1979), a "condition” is defined as a "state or situation.” However, there is no clear definition as to what is "physically offensive.”
Penal Law § 240.20 (7) is derived from section 250.2 (1) (c) of the Model Penal Code. (Commn Staff Notes reprinted in Proposed NY Penal Law [Study Bill, 1964 Senate Int 3918, Assembly Int 5376] § 290.05, at 389.) Both the 1961 and 1985 Commentaries to the Model Penal Code "explain that the words 'hazardous or physically offensive condition’, employed in the Model Penal Code as well as Penal Law § 240.20 (7), were intended to reach such activities as ' "stink bombs”, strewing garbage, nails, or noxious substances in public passages, turning off lights in an occupied theater,’ but also 'an endless variety of public annoyances that mischief can conceive.’ ” (People v Cooke, supra, at 315.) As other public nuisances, the statutory prohibition is expressly limited to *944 "acts that 'serve no legitimate purpose of the actor.’ ” (ALI Model Penal Code and Commentaries, Final Draft, at 347 [1985]; see also, 1961 Commentaries, Tentative Draft No. 13, at 7-8 [1961].)
"The 1964 Commission Staff Notes * * * [state] that: 'Subdivision [7] is a catchall provision * * * which is necessary because of the impossibility of compiling a comprehensive list of acts properly punishable as disorderly conduct’. According to ALI Proceedings 181 (1961), the term 'physically offensive,’ used in both the Model Penal Code and Penal Law § 240.20 (7) is 'meant to distinguish between olfactory assault — we don’t want stink bombs thrown either — and conduct which is offensive by virtue of the ideas which the actor may be putting forward.’ ” (People v Cooke, supra, at 315.)
The intent of the statute is to proscribe conduct that would be found to be physically offensive to a reasonable person when the actor’s conduct serves no legitimate purpose.
Nevertheless, it is entirely possible for reasonable minds to differ as to what is a physically offensive condition, especially when the conduct concerns issues of public debate. Under these circumstances, it may be very likely that individuals who would be deemed to be "reasonable persons” may have very diverse views of what is a "physically offensive condition”.
It is for this reason that this court holds that Penal Law § 240.20 (7) is unconstitutionally vague. While the statute may have been drafted with the intent of being a "catchall provision,” it must also define the prohibited conduct in sufficient detail to give notice to ordinary intelligent people and to prevent arbitrary enforcement. (Kolender v Lawson, 461 US 352 [1983]; People v Cruz, 48 NY2d 419, appeal dismissed 446 US 901.) The court finds that the statute does not sufficiently define the prohibited conduct of creating a "physically offensive condition” so as to give notice as to what is proscribed by the statute.
Accordingly, the court dismisses the accusatory instrument charging the defendant with violating Penal Law § 240.20 (7) on the basis that the statute is unconstitutionally vague.