GAMALIEL NEGRON, Defendant Below-Appellant,
v.
STATE OF DELAWARE, Plaintiff Below-Appellee.
No. 569, 2008
Supreme Court of Delaware.
Submitted: July 22, 2009.
Decided: August 24, 2009.
Before STEELE, Chief Justice, JACOBS, and RIDGELY, Justices.

ORDER
HENRY DUPONT RIDGELY, Justice
This 24th day of August 2009, upon consideration of the briefs of the parties and their contentions at oral argument, it appears to the Court that:
(1) Defendant-Appellant Gamaliel Negron appeals from his Superior Court conviction of possession with intent to deliver a controlled substance and possession of a firearm during the commission of a felony. Negron contends that the court erred as a matter of law in upholding his arrest and ensuing search, because police lacked reasonable and articulable suspicion that he was engaged in criminal activity. We find no merit to Negron's argument and affirm.
(2) At about 9:20 p.m. on February 15, 2008, Officers Mark Satterfield and Mark Henry of the Wilmington Police Department were on patrol on Fifth Street near Clayton Court Apartments in Wilmington. One of the apartment buildings faced Fifth Street, while the other buildings faced inward to create a courtyard. The officers had not received a complaint about any suspicious activity in the area; however Officer Satterfield got out of his car and entered the courtyard. At the suppression hearing, Officer Satterfield indicated he did so simply because, this area was a "high crime area" that was "more intense."
(3) The courtyard was well lit by floodlights and, once inside, Officer Satterfield observed Negron standing twenty yards away, "about five feet away from the front door of one of [the apartment] buildings." He was "turned away from the courtyard area, facing the wall, in bushes." Although Negron's pants were up and Officer Satterfield did not observe either his exposed penis or a urine stream, he concluded Negron had been urinating because he "did the shake to finish it," and then zipped up his pants.[1]
(4) Officer Satterfield approached Negron and asked him to come closer. He advised him that public urination was a crime and Negron responded, "I know." Officer Satterfield then asked Negron for identification. When Negron could not produce any, Officer Satterfield detained him and placed him in handcuffs. Officer Satterfield stated that at this point, he intended to charge Negron with disorderly conduct for urinating in public.
(5) Once Negron was in custody, Officer Satterfield frisked him. During the frisk, Officer Satterfield felt an object in an outside jacket pocket, but could not tell whether it was a cell phone or some other object. He also felt what he believed was a larger bag containing smaller bags in an inside jacket pocket. Based on his previous experience, Officer Satterfield believed it was packaged marijuana. He reached into the inside jacket pocket and seized the bag which contained sixteen smaller bags containing a substance that was later determined to be marijuana. Officer Satterfield then turned Negron over to Officer Henry, who escorted him to the patrol car. While searching Negron before putting him in the patrol car, Officer Henry discovered a loaded handgun and ammunition.
(6) On March 17, 2008, Negron was indicted on disorderly conduct, possession with intent to deliver ("PWID"), possession of a controlled substance within 300 feet of a park, possession of a firearm during the commission of a felony ("PFDCF"), and carrying a concealed deadly weapon ("CCDW"). Negron filed a motion to suppress, which the trial court denied after a hearing. After a stipulated bench trial, Negron was found guilty of PWID and PFDCF. The State entered a nolle prosequi on the remaining charges. Negron was sentenced to a mandatory term of three years at level V followed by two years at decreasing levels of supervision. This appeal followed.
(7) Negron contends that the police lacked reasonable and articulable suspicion that he was engaged in criminal activity; thus, the Superior Court erred as a matter of law in upholding his arrest and search that flowed from the officer's conclusion, based on wholly innocent behavior, that Negron had urinated in public. Negron argues that public urination is not a crime and there was no reasonable suspicion that he was engaged in any crime.
(8) We review the grant or denial of a motion to suppress for an abuse of discretion.[2] To the extent the trial judge's decision is based on factual findings, we review for whether the trial judge abused his or her discretion in determining whether there was sufficient evidence to support the findings, and whether those findings were clearly erroneous.[3] To the extent that we examine the trial judge's legal conclusions, we review them de novo for errors in formulating or applying legal precepts.[4] Where, as here, we are reviewing the denial of a motion to suppress evidence based on an allegedly illegal search and seizure, we conduct a de novo review to determine whether the totality of the circumstances, in light of the trial court's factual findings, support a reasonable and articulable suspicion for the stop or probable cause for a warrantless arrest.[5]
(9) A police officer may make a warrantless arrest for a misdemeanor "whenever the officer has reasonable ground to believe that the person to be arrested has committed a misdemeanor ... in the officer's presence...."[6] This Court has held that "the phrase `reasonable ground to believe' is also the legal equivalent of `probable cause' and should be accorded the same meaning."[7] Police officers have probable cause to make warrantless arrests when "at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the defendant] had committed or was committing an offense."[8]
(10) The State argues that Negron committed the misdemeanor of disorderly conduct by urinating in a public courtyard near a public entrance to a residential building. Pursuant to Title 11, Section 1301(f) of the Delaware Code, a person is guilty of disorderly conduct when "[t]he person intentionally causes public inconvenience, annoyance or alarm to any other person, or creates a risk thereof by: ... Creating a hazardous or physically offensive condition which serves no legitimate purpose...."[9]
(11) Whether public urination can satisfy Section 1301(f) appears to be an issue of first impression in Delaware; however it is in conformity with the type of conduct that statute is intended to prohibit. The Commentary to the Criminal Code indicates that "Paragraph (f) is a recognition that the limits of offensive behavior are unpredictable. It would apply to the use of "stink bombs", strewing garbage or other noxious substances in public passages, and turning off the lights in a public hall, for three examples."[10]
(12) New York has interpreted its disorderly conduct statute as prohibiting public urination.[11] Section 1301 is patterned on New York Penal Law § 240.20. Because the two statutes are substantively similar, New York's interpretation of its statute carries weight.[12] In People v. Cooke,[13] the defendant urinated outside a neighborhood tavern while in public view. He was observed by a police officer, who arrested him for disorderly conduct. The defendant moved to dismiss the charges. The court noted that "the most difficult issue of law in the present case is whether by his conduct the defendant created the `physically offensive condition' that Penal Law 240.20(7) requires for conviction."[14] After a detailed analysis of the legislative purpose behind the statute, the court concluded that public urination creates a physically offensive condition.[15] The court further emphasized that it was irrelevant whether anyone other than the police officer saw Cooke urinating, since "the issue is solely `the objective standard of public disturbance,' i.e., whether `a reasonable person, under the circumstances, would not tolerate' the conduct. It is the annoyance of `a neighborhood or the public,' or the risk thereof, that must be shown, and was sufficiently demonstrated here."[16]
(13) The New York statute was itself derived from, and nearly identical to, Model Penal Code § 250.2.[17] Pennsylvania's disorderly conduct statute was also derived from that section of the Model Penal Code and is also substantively similar to Delaware's statute.[18] As a result, Pennsylvania's interpretation of its statute is also persuasive. In Commonwealth v. Williams,[19] the Pennsylvania Superior Court addressed a case very similar to this one. A police officer observed the defendant urinating against a building. He had no identification, but told the officer he was from a neighboring borough. The officer informed the defendant that he would be issued a citation for disorderly conduct, but would have to go to the police station in order to verify his name and address. On patting the defendant down before putting him in the police car, the officer felt a long hard object he believed was a knife. When he removed it from the defendant's pocket, it was revealed to be a row of eleven packets of cocaine lined up along the bottom of the coat pocket. The officer arrested the defendant, who was charged with possession and PWID. The defendant filed a motion to suppress, which was denied, and he was convicted.[20]
(14) On appeal, the defendant claimed the officer did not have grounds to arrest and search him. The court distilled the exclusionary rule down to a "simple propositionif the appellant's arrest for the summary offense was lawful, then the subsequent search of his person must have been reasonable, and therefore any evidence derived from the search was properly admitted against him."[21] Because the officer observed the defendant urinating in public, "conduct which incontrovertibly constitutes disorderly conduct," the officer was authorized to stop the defendant.[22] Since the defendant had no identification, the officer was permitted to take him into custody in order to verify his identity. Therefore, the court concluded that the defendant's arrest was lawful and, consequently, that the search was reasonable and the evidence admissible.[23]
(15) Based on the language of Section 1301, the type of offensive behavior contemplated in the Commentary, and the interpretation afforded to disorderly conduct by New York and Pennsylvania, we conclude that public urination may constitute "a hazardous or physically offensive condition which serves no legitimate purpose" within the meaning of the statute. In the instant case, Officer Satterfield observed Negron standing in a well-lit public courtyard near a public entry to a residential building. He was partially obscured by a bush and facing away from the courtyard, but only five feet from the building entrance. Officer Satterfield was able to observe him "shake" and zip up his pants. These factors were sufficient to constitute probable cause that Negron was committing or had just committed the offense of disorderly conduct. Because Officer Satterfield had probable cause to believe Negron had committed a misdemeanor in his presence, he was permitted to effect a warrantless arrest of Negron pursuant to Section 1904.
(16) Negron also contends that Officer Satterfield violated Title 11, Section 1903 because he did not make a showing that he believed Negron to be armed and dangerous.[24] This argument is without merit. Once the arrest had occurred, Officer Satterfield could lawfully search Negron incident to that arrest.[25] A showing under Section 1903 was not necessary.[26]
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] The court did not permit Officer Satterfield to demonstrate the motion, acknowledging that, by virtue of common sense and experience, he was aware of what the act entailed.
[2] Williams v. State, 962 A.2d 210, 214 (Del. 2008); Lopez-Vazquez v. State, 956 A.2d 1280, 1284 (Del. 2008); Culver v. State, 956 A.2d 5, 10 (Del. 2008); Flonnory v. State, 893 A.2d 507, 515 (Del. 2006); McAllister v. State, 807 A.2d 1119, 1122-23 (Del. 2002).
[3] Williams, 962 A.2d at 214; Lopez-Vazquez, 956 A.2d as 1285; Chavous v. State, 953 A.2d 282, 286 n.15 (Del. 2008); McAllister, 807 A.2d at 1123.
[4] Williams, 962 A.2d at 214; Lopez-Vazquez, 956 A.2d as 1284-85; Chavous, 953 A.2d at 286 n.15; Flonnory, 893 A.2d at 515; McAllister, 807 A.2d at 1123.
[5] Lopez-Vazquez, 956 A.2d as 1285; see also Coley v. State, 886 A.2d 1277, 2005 WL 2679329, at *2 & n.9 (Del. Oct. 18, 2005) (Table).
[6] 11 Del. C. § 1904; accord Coley, 2005 WL 2679329, at *2.
[7] Thompson v. State, 539 A.2d 1052, 1055 (Del. 1988).
[8] Coley, 2005 WL 2679329, at *2 (citing Thompson, 539 A.2d at 1055); see also Illinois v. Gates, 462 U.S. 213, 231 (1983).
[9] 11 Del. C. § 1301(f).
[10] DELAWARE CRIMINAL CODE WITH COMMENTARY § 1301, 387 (1973).
[11] People v. Cooke, 578 N.Y.S.2d 76 (N.Y. Just. Ct. 1991).
[12] In Chance v. State, 685 A.2d 351, 355 (Del. 1996), we recognized the connection between certain provisions of the Delaware Criminal Code and the Model Penal Code and New York's Penal Law by using Appendix C to the PROPOSED DELAWARE CRIMINAL CODE WITH COMMENTARY (1967). Appendix C provides a "Table of Sources of Proposed Delaware Criminal Code" "offered to assist the Bench and Bar in interpreting the provisions of the Code." Id. app. C. The drafters "expect[ed] that case law in other jurisdictions using similar sources will be helpful aids in construing the proposed provisions." Id. The appendix indicates that New York Penal Law § 240.20 was the source of our current disorderly conduct statute. Id. Compare 11 Del. C. § 1301 with N.Y. Penal Law § 240.20. Section 240.20 provides, in pertinent part:

A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: ... He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose.
N.Y. Penal Code § 240.20(7).
[13] 578 N.Y.S.2d at 77.
[14] See id. at 78.
[15] See id. at 78-79.
[16] Id. at 79.
[17] Id. at 78; see MODEL PENAL CODE § 250.2(1), which provides: "A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (c) creates a hazardous or physically offensive condition by an act which serves no legitimate purpose of the actor."
[18] PA. CONS. STAT. ANN. § 5503(a) (providing that a person is guilty of disorderly conduct when he "creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor").
[19] 568 A.2d 1281 (Pa. Super. Ct. 1990).
[20] Id. at 1281-82.
[21] Id. at 1283.
[22] Id. at 1288.
[23] Id.; accord Commonwealth v. Strickler, 757 A.2d 884,890 n.5 (Pa. 2000) (citing Williams, 568 A.2d 1281) ("The arresting officer testified that he observed [the defendant] and his companion urinating beside a public roadway adjacent to a farm property, which, under prevailing precedent, may be treated as the predicate for the summary offense of disorderly conduct.").
[24] See 11 Del. C. § 1903 ("A peace officer may search for a dangerous weapon any person whom the officer has stopped or detained to question as provided in § 1902 of this title, whenever the officer has reasonable ground to believe that the officer is in danger if the person possesses a dangerous weapon.").
[25] Williams, 962 A.2d at 222; Harris v. State, 880 A.2d 1047, 2005 WL 2219212, at *2 (Del. Aug. 15, 2005) (citing Chimel v. California, 395 U.S. 752 (1969)); Jones v. State, 745 A.2d 856, 872 (Del. 1999); see also State v. Severin, 1982 WL 593131 (Del. Super. Ct. Mar. 23, 1982) (citing Wong Sun v. United States, 371 U.S. 471, 478, 488 (1963)).
[26] See U.S. v. Osife, 398 F.3d 1143, 1145 (9th Cir. 2005) (discussing United States v. Robinson, 414 U.S. 218 (1973); Chimel, 395 U.S. 752).