IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TYRIK A. SPENCER, | § | |
| | § | No. 461, 2017 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID. No. N1609004631A |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: June 13, 2018
Decided: June 25, 2018

Before **STRINE**, Chief Justice; **VAUGHN**, and **SEITZ**, Justices.

## **ORDER**

This 25th day of June, 2018, having considered the briefs and the record below, it appears to the Court that:

(1) A Superior Court grand jury indicted Tyrik Spencer for various crimes, including drug dealing and weapons-related offenses, arising out of a police stop while Spencer was riding a bicycle on the wrong side of the road while smoking what the arresting officer called a "marijuana cigar."[1] The State later dropped some of the charges, and on July 13, 2017, a jury found Spencer guilty of the remaining

_____

[1] App. to Opening Br. at 44 (Search Warrant App. & Aff., Compl. No. 32-16-085604, ¶ 3 (Del. J.P. Sept. 6, 2016)).

charges.  The court declared Spencer an habitual offender and sentenced him to thirty-seven years at Level V, suspended after thirty-two years with decreasing levels of supervision.  Spencer has appealed his convictions, focusing on the Superior Court's refusal to suppress evidence gathered by police incident to arrest.  We agree with the Superior Court that the evidence leading to Spencer's convictions should not have been suppressed, and affirm Spencer's convictions.

(2)     On September 6, 2016, multiple police officers were patrolling in the Llangollen area, which includes a development known as Buena Vista.  The New Castle County Police had received multiple complaints about street-level illegal drug dealing in the area.  Around Noon, an undercover officer saw Tyrik Spencer on Buena Vista Drive riding a bicycle on the wrong side of the road while smoking what appeared to be a marijuana cigar.  He radioed another officer, Andrew Rosaio, who saw Spencer stop alongside the driver-side window of a vehicle, speak with the driver, and hand the driver the marijuana cigar.  Officer Rosaio approached Spencer and smelled the "odor of burnt marijuana."[2]  He detained Spencer and the driver of the vehicle, placing them in handcuffs and putting them in the police car.  The Officer later testified that "[it] was a drug investigation from that point forward."[3]

---

[2]  *Id.* at 45 (Search Warrant App. & Aff., ¶ 6); *id.* at 83 (Tr. Mot. to Suppress, *State v. Spencer*, No. 1609004613A, at 12 (Del. Super. June 19, 2017)).
[3] *Id.* (Tr., at 14).

(3) The Officer conducted a "probable cause search" and found a bundle of heroin in the driver's shoe. The Officer searched Spencer and found two cell phones and a key to a townhouse at 15 Vista Court in Buena Vista in his pockets.[4] The police read the driver his Miranda rights and then questioned him. The driver first stated that he already had the heroin when he came to speak with Spencer. Later, still during the stop, he admitted that he came to the neighborhood to purchase heroin from Spencer, which he then hid in his shoe.[5] Spencer told the Officer that he came from his girlfriend's house at 15 Vista Court.[6] The police contacted Spencer's girlfriend, who identified herself as Spencer's wife and stated that she saw Spencer leave 15 Vista Court on his bike around noon, which was around the time the police officers stopped Spencer.[7]

(4) Officer Rosaio applied for a warrant to search 15 Vista Court, and supported the request with the following facts:

- Spencer contacted the driver through the driver side window, holding what appeared to be a marijuana cigar;

- When Officer Rosaio approached the car, he smelled burnt marijuana and saw Spencer discretely hand the marijuana cigar to the driver;

---

[4] *Id.* (Search Warrant App. & Aff. ¶ 8).
[5] *Id.* at 87 (Tr., at 16).
[6] *Id.* at 133 (Tr., at 62).
[7] *Id.* at 45 (Search Warrant App. & Aff. ¶ 12). She also stated that he lived at 15 Vista Court and had possessions there; however, his name was not on the lease and his residence was listed as elsewhere.

3

- The Officer located two cell phones, and he knew drug dealers often used multiple phones to conduct illegal drug transactions;

- He found a white substance that field-tested as positive heroin in the driver's shoe;

- The driver admitted to the Officer that he came to Buena Vista to buy heroin from Spencer for $35; and

- Spencer had just left 15 Vista Court, had a key to the townhouse in his pocket, and his wife confirmed he had left the townhouse on his bicycle just before being stopped by police.

The court issued the search warrant for the townhouse, which the officers executed and found cash, guns, ammunition, drugs, and drug paraphernalia.[8]

(5) A New Castle County grand jury indicted Spencer for drug dealing, aggravated possession, possession of a firearm during the commission of a felony, possession of a firearm by a person prohibited, illegal possession of a controlled substance, possession of drug paraphernalia, and endangering the welfare of a child. The Superior Court denied Spencer's motion to suppress the evidence seized. At trial, the State dismissed three charges—drug dealing, possession of a controlled substance, and endangering the welfare of a child. On July 13, 2017, a jury found Spencer guilty of the remaining charges. The court declared him an habitual

---

[8] *Id*. at 44–46 (Search Warrant App. & Aff.).

4

offender and sentenced him to thirty-seven years at Level V, suspended after thirty-two years with decreasing levels of supervision.

(6)     On appeal, Spencer makes two arguments related to the denial of the motion to suppress: first, the duration and execution of the stop exceeded the initial purpose for the stop—wrong direction bike riding and marijuana use; and second, the search warrant for 15 Vista Court was not supported by probable cause and lacked a connection between the evidence sought and the place to be searched.  The Superior Court found that the duration and execution of the stop did not extend past what is permissible, and that the warrant was supported by probable cause.[9]  We review the denial of a motion to suppress for an abuse of discretion.[10]

(7)     The Fourth Amendment to the United States Constitution and Article I, § 6 of the Delaware Constitution protect an individual's right to be free from unlawful government searches and seizures.[11]  Courts apply a two-step inquiry to determine the lawfulness of the stop—"[f]irst, the stop must be justified at its inception by reasonable suspicion of criminal activity as defined in *Terry v. Ohio*. Second, the stop and inquiry must be reasonably related in scope to the justification

---

[9] App. to Opening Br. at 152 (Tr., at 81).

[10] *Jones v. State*, 28 A.3d 1046, 1051 (Del. 2011); *State v. Rollins*, 922 A.2d 379, 382 (Del. 2007) ("When reviewing the findings and judgment after an evidentiary hearing on a motion to suppress, this Court will defer to the factual findings of a Superior Court judge unless those findings are clearly erroneous.").

[11] *Woody v. State*, 765 A.2d 1257, 1262 (Del. 2001); *Jones v. State*, 745 A.2d 856, 860 (Del. 1999).

5

for their initiation."[12]  Whether a detention is reasonably related to the purpose of the stop "necessarily involves a fact-intensive inquiry in each case."[13]

(8)    Spencer does not challenge the lawfulness of the original stop.[14]  A person may be lawfully detained and questioned under 11 *Del. C.* § 1902 when an officer has "reasonable ground[s] to suspect [he] is committing, has committed or is about to commit a crime."[15]  The Officer had reasonable suspicion[16] to stop and detain Spencer when he saw Spencer illegally riding his bike on the wrong side of the road while smoking a marijuana cigar, which he handed to the driver.[17]  Where the parties diverge is whether the Officer could then search Spencer for additional evidence of a crime.  Spencer argues that the search should have been limited to investigating the facts relating to riding his bicycle on the wrong side of the road or smoking marijuana, which did not require searching his person.  The State responds

---

[12] *Caldwell v. State*, 780 A.2d 1037, 1046 (Del. 2001) (citing *Terry v. Ohio*, 392 U.S. 1, 16–19 (1968)).

[13] *Id.* at 1048.

[14] Opening Br. at 9; 11.

[15] 11 *Del. C.* § 1902(a).

[16] *Coleman v. State*, 562 A.2d 1171, 1174 (Del. 1989) (stating that reasonable suspicion requires the officer to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion" (quoting *Terry*, 392 U.S. at 21)).

[17] *See* 21 *Del. C.* § 4196 ("Upon all roadways of sufficient width a bicycle operator shall travel in the right half of the roadway . . . ."); 16 *Del. C.* § 4764(d) ("Any person 18 years of age or older who knowingly or intentionally uses or consumes up to a personal use quantity of a controlled substance or a counterfeit controlled substance classified in § 4714(d)(19) of this title in an area accessible to the public or in a moving vehicle, except as otherwise authorized by this chapter, shall be guilty of an unclassified misdemeanor and be fined not more than $200, imprisoned not more than 5 days, or both."); 16 *Del. C.* § 4714(d)(19) (listing marijuana as a controlled substance).

that in addition to the marijuana and bicycle violations, the police had reasonable articulable suspicion that Spencer was engaged in drug dealing, because he stopped by the driver-side window of a parked vehicle in an area known for drug-dealing and handed the marijuana cigar to the driver.[18] The driver also admitted that he came to the area to purchase heroin from Spencer. Thus, further investigation was appropriate.

(9) "[A]ny investigation of the vehicle or its occupants beyond that required to complete the purpose of the traffic stop constitutes a separate seizure that must be supported by independent facts sufficient to justify the additional intrusion."[19] The Officer testified that after he detained Spencer "[it] was a drug investigation from that point forward."[20] Thus, we must determine whether that the drug investigation was supported by independent facts. We agree with the Superior Court that it was. Spencer was smoking a marijuana cigar and rode up alongside the driver-side window of a parked car and handed it to the driver. In addition, the Officer smelled burnt marijuana when he arrived at the car and Spencer admitted

---

[18] Answering Br. at 10.
[19] *Caldwell*, 780 A.2d at 1047; *see also Florida v. Royer,* 460 U.S. 491, 500 (1983) ("An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."); *Hall v. State*, 981 A.2d 1106, 1111 (Del. 2009) ("In determining whether reasonable suspicion exists, the court looks at the totality of the circumstances, 'as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts.'" (quoting *Woody*, 765 A.2d at 1263)).
[20] App. to Opening Br. at 85 (Tr., at 14).

7

that he had been smoking marijuana.[21]  In addition, the driver admitted that he came to buy drugs from Spencer.[22]

(10)   Spencer also argues the search exceeded the scope of the reasonable suspicion justifying the stop because a suspect may only be searched if the Officer has "a reasonable belief that the detainee is presently armed and dangerous,"[23] and the Officer did not have that fear.  The State responds that the police had probable cause to arrest Spencer "almost immediately," based on the traffic violation and the marijuana cigar.[24]  According to the State, "the marijuana's strong odor was alone sufficient to establish probable cause that Spencer possessed the drug."[25]  Thus , the State asserts, because the police had probable cause to arrest him, the search was lawful.[26]

(11)   "A warrantless search, to be valid, must fall within a recognized exception to the warrant requirement of the Fourth Amendment."[27]  While Spencer

---

[21] *See Chisholm v. State*, 988 A.2d 937, 2010 WL. 424241, at *2 (Del. Feb. 4, 2010) (finding a search and seizure was lawful based on the "strong odor of marijuana" and the fact the defendant was clutching his jacket).

[22] *See Jenkins v. State*, 970 A.2d 154, 158 (Del. 2009) (finding "sufficient justification to conduct a separate search and seizure beyond the purpose of the initial traffic stop" when a police officer "smelled a strong odor of marijuana," which established probable cause to arrest the defendant and search the car).

[23] Opening Br. at 32 (quoting *Caldwell*, 780 A.2d at 1051); *see also Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) ("If a protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid . . . and its fruits will be suppressed.").

[24] Answering Br. at 10.

[25] *Id.* at 9.

[26] *Id.* at 10.

[27] *Coley v. State*, 886 A.2d 1277, 2005 WL 2679329, at *1 (Del. Oct. 18, 2005) (TABLE).

is correct that police may search a suspect for weapons if the Officer reasonably believes the suspect is armed and dangerous, they may also search a suspect incident to a lawful arrest.[28] While a search typically occurs after an arrest, this Court has held that "where the arrest and search are nearly contemporaneous, the search may precede the arrest, so long as the police do not use the search to establish probable cause for the arrest."[29]

(12) Spencer was not under arrest at the time of the search; however, he was arrested shortly afterwards.[30] The police did not use the evidence obtained in the search—the key and two phones—to establish probable cause to arrest him. Instead, the police had probable cause to arrest Spencer for the traffic violation and possession of marijuana alone,[31] and once the driver admitted that he bought drugs

---

[28] *Brown v. State*, 2014 WL 5099648, at *2 (Del. Oct. 9, 2014) ("In a search incident to arrest, it does not matter whether the arresting officer believes that the arrestee is armed, dangerous or likely to destroy evidence.").

[29] *Ortiz v. State*, 862 A.2d 386, 2004 WL 2741185, at *3 (Del. Nov. 16, 2004) (TABLE) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)); *cf. Negron v. State*, 979 A.2d 1111, 2009 WL 2581714, at *4 (Del. Aug. 24, 2009) (TABLE) (explaining that when an arrest is lawful, a search is lawful and evidence obtained from it is admissible).

[30] *Coley*, 2005 WL 2679329, at *2 ("Here, it is undisputed that [the officer] arrested [the defendant] immediately following the search or pat-down. The contemporaneity requirement, therefore, has been satisfied.").

[31] *See State v. Bien-Aime*, 1993 WL 138719, at *4 (Del. Super. Mar. 17, 1993) ("The fact that a defendant was not arrested until after a search revealing contraband does not void the search as being incident to a lawful arrest if probable cause existed to arrest the defendant before the search.").

from Spencer, the police had probable cause to arrest him for drug dealing as well. Thus, the search was a valid search incident to arrest.[32]

(13) Turning to the validity of the search warrant, Spencer argues it was invalid because it was not supported by probable cause and there was an insufficient connection between the evidence sought and the search of the townhouse at 15 Vista Court.[33] As for probable cause, the Superior Court found there was sufficient probable cause to search the residence based on the driver's statement that he purchased drugs from Spencer, Spencer's statement that he came from 15 Vista Court just before the stop, Spencer's wife's statement that she saw him leave there on his bike around the time of the stop, and the fact that Spencer had a key to the residence.[34]

(14) On appeal, Spencer argues that "the affidavit did not set forth any facts that would permit an impartial judicial officer to reasonably conclude that heroin would be found at 15 Vista Court."[35] To support a search warrant, the police affidavit must "set forth facts that, within the affidavit's four corners, are sufficient for a neutral magistrate to conclude that a crime has been committed and that the property

---

[32] *Cf. Stafford v. State*, 59 A.3d 1223, 1232 (Del. 2012), *as corrected* (Mar. 7, 2013) ("At the time Santiago searched Stafford, probable cause existed to arrest him and, therefore, Santiago had the authority to conduct a search incident to an arrest.").
[33] Opening Br. at 13–16.
[34] App. to Opening Br. at 154–56 (Tr., at 83–85).
[35] Opening Br. at 12, 15.

sought to be seized would be found in a particular place."[36] To establish probable cause, the Magistrate determines, based on the totality of the circumstances, whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[37] We review the Magistrate's decision with "great deference" to determine whether there was a substantial basis for a finding of probable cause.[38]

(15)    In looking at the totality of the circumstances within the four corners of the affidavit, there was a substantial basis to support the magistrate's finding of probable cause. The affidavit recited that Spencer was in a high illegal drug area, rode his bike up to the driver side of a parked car, and handed marijuana to the driver; the driver had heroin in his shoe and admitted buying it from Spencer; Spencer had two phones in his pocket; Spencer and his wife confirmed he left 15 Vista Court around the time of the stop; and 15 Vista Court was just down the street from the stop. Although we might not come to the same conclusion,[39] the record shows enough of a basis for the conclusion that Spencer left his house with heroin to deliver

[36] *Id.*; *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006) ("Moreover, a neutral and detached magistrate may draw reasonable inferences from the factual allegations in the affidavit.").

[37] *Sisson*, 903 A.2d at 296; *see also Rivera v. State*, 7 A.3d 961, 966 (Del. 2010).

[38] *Sisson*, 903 A.2d at 296; *see also Jensen v. State*, 482 A.2d 105, 111 (Del. 1984) ("A determination of probable cause by the issuing magistrate will be paid great deference by a reviewing court and will not be invalidated by a hypertechnical, rather than a common sense, interpretation of the warrant affidavit.").

[39] *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972) ("If [the court's findings] are sufficiently supported by the record and are the product of an orderly and logical deductive process, in the exercise of judicial restraint we accept them, even though independently we might have reached opposite conclusions.").

to the driver down the street, and a "fair probability" existed that more drugs were located at his home.[40]

(16)   Lastly, Spencer argues the search warrant was invalid because it did not establish a sufficient connection between the evidence sought and 15 Vista Court.[41] He argues that probable cause to arrest a person does not lead to probable cause to search someone's home, and the affidavit did not set forth "specific factual information" sufficient for probable cause to search his residence.[42]   The State responds that there is a sufficient connection based on the Officer's experience and knowledge that drug dealers keep drugs in their homes, and that Spencer had just left 15 Vista Court and had a key to the townhouse.[43]

(17)   "In determining whether probable cause has been demonstrated, there must be a *logical* nexus between the items sought and the place to be searched."[44] "Concrete firsthand evidence that the items sought are in the place to be searched is not always required in a search warrant.  The question is whether one would normally

---

[40] *Cf. Hooks v. State*, 416 A.2d 189 (Del. 1980) (finding a residence was a logical place to search for a weapon and clothing used in a crime based in part on the vicinity of the house to the crime and the fact the suspects were seen there prior to the crime).

[41] Opening Br. at 13–16.

[42] *Id.* at 14; *see Dorsey v. State*, 761 A.2d 807, 813 (Del. 2000) ("[P]robable cause to arrest does not automatically provide probable cause to search the arrestee's home . . . .").

[43] Answering Br. at 16; *see* App. to Opening Br. at 89 (Tr., at 18) ("Given the close proximity of Mr. Spencer where we first observed him to where he initially stated that he was coming from, we believed that there were additional drugs at that particular residence.").

[44] *Dorsey*, 761 A.2d at 811 (emphasis in original).

expect to find those items at that place."[45]  While Spencer is correct that probable cause to arrest does not establish probable cause to search the arrestee's home, "the fact that probable cause to arrest has been established increases the probability that the defendant is storing evidence of that crime in the defendant's residence."[46]

(18)    While we would be reluctant to rely exclusively on an officer's general knowledge about how drug dealers operate to support a probable cause finding, in this case, there was sufficient additional evidence to connect the townhouse with the evidence of crimes gathered at the stop.  As we have noted earlier, Spencer was close to the townhouse and had a key to the door.  Spencer also left the townhouse around the time the driver admitted he came to buy drugs from Spencer and had a substance hidden in his shoe that tested positive for heroin.  This is specific factual information from which a magistrate could reasonably conclude that Spencer brought drugs to sell from his home, providing a logical nexus between Spencer and 15 Vista Court.

(19)    Officer Rosaio lawfully stopped, detained, and searched Spencer.  The search warrant was supported by probable cause and had a sufficient connection to

[45] *Hooks*, 416 A.2d at 203; *see also Morgan v. State*, 962 A.2d 248, 253 (Del. 2008) ("The nexus between the objects to be seized and the premises searched need not, and often will not, rest on direct observation, but rather 'can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime] . . . .'" (quoting *United States v. Feliz*, 182 F.3d 82, 88 (1st Cir. 1999))).

[46] *Dorsey*, 761 A.2d at 813 (quoting *United States v. Jones*, 994 F.2d 1051, 1055–56 (3d Cir. 1993)).

the place searched.  The Superior Court did not abuse its discretion in denying Spencer's motion to suppress.

NOW, THEREFORE, it is hereby ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice