Submitted January 27, reversed and remanded August 19, 2015

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JARED WILLIAM LANG,
*Defendant-Appellant.*

Benton County Circuit Court
CM1320460; A154498

359 P3d 349

Peter Gartlan, Chief Defender, and Kyle Krohn, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Matthew J. Lysne, Senior Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

HADLOCK, J.

## HADLOCK, J.

ORS 166.025 provides that a person commits second-degree disorderly conduct if the person creates a "hazardous or physically offensive condition by any act which the person is not licensed or privileged to do" with intent to cause, or recklessly creating a risk of causing, public inconvenience, annoyance, or alarm. Defendant's home was searched pursuant to a search warrant that a circuit court issued after finding probable cause to believe that evidence of second-degree disorderly conduct would be found there. A police officer applied for the warrant after receiving complaints that the odor of burnt marijuana had travelled from defendant's home, the middle unit in a triplex, into the neighboring units. The search revealed evidence that defendant was responsible for several instances of graffiti, and he was charged with criminal mischief. Before trial, defendant moved to suppress the evidence discovered in the search, arguing that the officer's search-warrant affidavit did not establish probable cause to believe that disorderly conduct had occurred. Specifically, defendant argued that the odor of burnt marijuana does not constitute a "hazardous or physically offensive condition" within the meaning of ORS 166.025. The trial court denied the motion, the evidence was introduced at trial, and defendant was convicted of three counts of criminal mischief. On appeal, he renews the contention that the warrant affidavit did not establish probable cause to believe that a physically offensive condition had been created at defendant's home. We agree and, accordingly, reverse and remand.

### THE FACTS

The material facts are neither extensive nor disputed. Philomath Police Officer Moser applied for a search warrant and supported that application with an affidavit that set out the following facts. One of defendant's neighbors, D, called the police at 7:30 p.m. one evening and reported that marijuana smoke was coming into his home. Moser was dispatched to the triplex. When he arrived, he could smell marijuana smoke, which seemed to be coming from defendant's home. He knocked on defendant's door, but no one answered, so he left. About an hour and a quarter

later, D called the police and complained again, and Moser returned to the triplex. Two people were standing outside defendant's home. Moser told them that the neighbors were becoming irritated with the smell and asked them to put a fan in a window or do something else to remove the smoke. Moser did not smell any smoke at that time.

Moser then spoke with D and three other people in his residence. They each reported having smelled marijuana inside the residence at 7:30 p.m. D said that he called the police the second time after he "again began to smell the odor." D said that that had not been the first time marijuana odor had come into the home. He told Moser that he had lived there for eight years and that "the neighbors in the middle rental ha[d] gotten worse and worse." One of the other people told Moser that the smell was especially difficult for him because he was currently attending rehabilitation for drug abuse and the smell of marijuana was a "trigger" for him.

Moser next spoke with two people who lived in the third unit of the triplex. They told him that they smelled marijuana two or three times a week, that there was a lot of foot traffic at the middle unit, and that they believed that "meth [was] likely being smoked at the residence in addition to marijuana." Moser asked if that caused them any concern. They said that it did and that they had noticed that the "appeal of the neighborhood ha[d] diminished."

Moser returned to the police department and investigated further. He learned that no resident of the middle unit had a medical marijuana card and that the residence was not a registered site for growing medical marijuana. Moser concluded that the neighbors had been "subjected to a physically offensive condition by the residents of [the middle unit,] who did not have a license or privilege to do so." He submitted the search warrant affidavit to the circuit court, stating in it that he had probable cause to believe that a search of defendant's home would result in the discovery of evidence of second-degree disorderly conduct.[1]

---

[1] In his investigation, Moser also discovered that defendant's residence was located within 1000 feet of a school. The circuit court issued the warrant in part based on probable cause to believe that a search would reveal evidence of unlawful possession of marijuana within 1000 feet of a school, in violation of

The court issued a warrant to search defendant's home. The ensuing search revealed cans of spray paint and stencils that had been used to make graffiti on street signs, walls, fences, and other places around Philomath. Defendant was charged with four counts of criminal mischief. Before trial, he moved to suppress the evidence discovered in his home. The court denied the motion, and, after a jury trial, defendant was convicted of three of the counts.[2]

## THE PARTIES' ARGUMENTS ON APPEAL

On appeal, defendant argues that Moser's affidavit did not establish probable cause to believe that disorderly conduct had occurred in his home. Specifically, defendant contends that the odor of burned marijuana is not a "hazardous or physically offensive condition" within the meaning of ORS 166.025. That statute provides, in part:

"(1)   A person commits the crime of disorderly conduct in the second degree if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person:

"(a)   Engages in fighting or in violent, tumultuous or threatening behavior;

"(b)   Makes unreasonable noise;

"(c)   Disturbs any lawful assembly of persons without lawful authority;

"(d)   Obstructs vehicular or pedestrian traffic on a public way;

"(e)   Initiates or circulates a report, knowing it to be false, concerning an alleged or impending fire, explosion, crime, catastrophe or other emergency; or

---

ORS 475.864(4) (2011), *amended by* Or Laws 2013, ch 591, § 2. In his motion to suppress, defendant also challenged that part of the warrant, asserting that ORS 475.864(4) (2011) applied only if marijuana was possessed in a public place and that the affidavit suggested only that marijuana had been possessed inside defendant's private residence. The state conceded the point, and the court did not consider that offense in determining whether the affidavit furnished probable cause to issue a warrant. That part of the court's decision is not at issue on appeal.

[2] The trial court granted the state's motion to dismiss one of the counts based on insufficiency of the evidence. That count is not involved in this appeal.

"(f)   Creates a hazardous or physically offensive condition by any act which the person is not licensed or privileged to do."

Paragraph (1)(f) is the only provision of the statute that potentially applies in this case. Defendant argues that the phrase "hazardous or physically offensive condition" does not include "trivial annoyances," citing our opinion in *State v. Clark*, 39 Or App 63, 67, 591 P2d 752, *rev den*, 286 Or 303 (1979), *overruled on other grounds by State v. Willy*, 155 Or App 279, 963 P2d 739 (1998). He further contends that, for a condition to be hazardous or physically offensive, it must create some physical harm or danger. In defendant's view, the facts set out in Moser's affidavit do not support an inference that the burnt-marijuana odor put anyone in physical danger.

The state responds that a physically offensive condition is one that induces pain or unpleasant sensations in the bodies of other persons. In the state's view, an unpleasant odor is physically offensive because it is "offensive to the sensory organs of the body—the nose." According to the state, the odor of burned marijuana is unpleasant to those who smell it. Indeed, the state asserts, "the 'odor of marijuana' is synonymous with the dictionary example of what is 'offensive' (the 'odor of garbage')." Thus, the state contends, the trial court correctly concluded that Moser's affidavit furnished probable cause to believe that second-degree disorderly conduct had been committed.

## ANALYSIS

Article I, section 9, of the Oregon Constitution provides that "no warrant shall issue but upon probable cause ***." When a defendant challenges the sufficiency of a search warrant affidavit, a reviewing court must determine whether "a neutral and detached magistrate could conclude (1) that there is reason to believe that the facts stated are true; and (2) that the facts and circumstances disclosed by the affidavit are sufficient to establish probable cause to justify the search requested." *State v. Castilleja*, 345 Or 255, 264, 192 P3d 1283, *adh'd to on recons*, 345 Or 473, 198 P3d 937 (2008).

"[T]o uphold the warrant, the reviewing court need only conclude that the issuing magistrate reasonably could conclude that the facts alleged, together with the reasonable inferences that fairly may be drawn from those facts, establish that seizable things *probably* will be found at the location to be searched."

*Id.* at 270-71 (emphasis in original).

Here, defendant has not sought to controvert the facts stated in Moser's affidavit. Accordingly, the question before us is whether those facts furnished probable cause. That probable-cause analysis presents a legal question. *Id.* at 264, 266. Nonetheless, because this case involves review of a search warrant, "we resolve doubtful or marginal cases in favor of the preference for warrants." *State v. Henderson*, 341 Or 219, 225, 142 P3d 58 (2006).

Before we address the parties' arguments, it is important to note that defendant's appeal is limited to challenging whether the affidavit furnished probable cause to believe that someone in his residence had created a physically offensive condition. He does not argue that the affidavit failed to describe evidence sufficient to establish a potential for *public* inconvenience, annoyance, or alarm. That is, he does not argue that the triplex—either the inside of the neighboring residences or the area outside the building—was not a sufficiently public location. Nor does he contend that, even if he created a physically offensive condition, he did not do so "by [an] act which [he was] not licensed or privileged to do." ORS 166.025(1)(f). Moreover, defendant does not argue that the affidavit failed to establish the requisite intent or recklessness. Finally, defendant does not contend that, even if the affidavit sufficiently established probable cause to believe that defendant had committed disorderly conduct, it did not establish probable cause to believe that evidence of that crime could be found in his home. Because defendant does not raise those issues, we assume, without deciding, that the affidavit was sufficient in those respects.

The parties' arguments about the meaning of the term "physically offensive" present a question of statutory interpretation. To determine the legislature's intent, we look to the text of ORS 166.025 in context as well as the

legislative history and, if necessary, to interpretive maxims. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We begin with the words of the statute themselves. Because the term "physically offensive" is not statutorily defined, we assume that the legislature intended the words to carry their ordinary meaning. "Physically" means "in respect to the body." *Webster's Third New Int'l Dictionary*, 1707 (unabridged ed 2002). "Physical," in turn, means "of or relating to the body <~ strength>—often opposed to *mental.*" *Id.* at 1706. "Offensive" means "giving painful or unpleasant sensations" and is synonymous with "nauseous, obnoxious, [and] revolting." *Id.* at 1566. Those synonyms suggest that the word "offensive" implies a greater degree of displeasure or discomfort than the word "unpleasant" might, standing alone.

The wording of the statute undermines defendant's interpretation of "physically offensive" as encompassing only conditions that are dangerous. In making that argument, defendant relies on a definition of "offensive" that the dictionary itself identifies as obsolete: "causing injury or damage: harmful." *See id.* In the context of this statute, the definition of "offensive" noted in the above paragraph makes more sense. As noted, the statute proscribes creating a condition that is "hazardous or physically offensive." The modifiers "hazardous" and "physically offensive" are listed disjunctively. That is, a condition proscribed by the statute can be hazardous without being physically offensive, and vice versa. Thus, defining "physically offensive" as limited to harmful or injurious conditions would make it redundant to the proscription of creating hazardous conditions. We assume that the legislature intended each part of its enactments to have effect and that, when the legislature uses different words, it means different things. *See* ORS 174.010 ("In the construction of a statute, * * * where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.").

The legislative history of ORS 165.025 also contradicts defendant's interpretation. The Criminal Law Revision Commission, which drafted ORS 165.025 in 1970 as part of an overhaul of the criminal code, stated that subsection (1)(f) is "*a general provision designed to reach activity that*

constitutes a public nuisance but that is not specifically proscribed under the other subsections." The commission noted that the provision was "necessitated by the impossibility of itemizing every kind of act properly punishable as disorderly conduct," and it gave one example of specific conduct that the statute was meant to reach: "use of stink bombs in public places." *Former* ORS 166.140(2) (1969), *repealed by* Or Laws 1971, ch 743, § 432, defined "stink bomb" to include any "article or device containing a chemical or substance of an offensive or noxious odor." Thus, while a stink bomb *could* be harmful or injurious (*i.e.*, noxious), it could also be merely offensive—that is, nauseous, obnoxious, or revolting. Accordingly, we reject defendant's proffered interpretation of the term "physically offensive."

The state's interpretation of "physically offensive" to mean a condition that induces unpleasant sensations, on the other hand, is consistent with the wording of the statute; it preserves the distinction between hazardous conditions and physically offensive conditions. It is also consistent with the legislative history; setting off a stink bomb in a public place would still be proscribed even if it did not create a physically harmful condition. Statutory context confirms the state's interpretation: ORS 166.025 was drawn almost verbatim from the Model Penal Code (MPC), so we look to that code for clues about how the legislature understood the term "physically offensive." The MPC was published by the American Law Institute (ALI) in 1962. At the 1961 ALI annual meeting, Professor Louis Schwartz, who was introduced as "the expert on disorderly conduct," explained to those in attendance, " 'Physically offensive' is meant to distinguish between olfactory assault * * * and conduct which is offensive by virtue of the ideas which the actor may be putting forward." American Law Institute, *Proceedings* 181 (1961). In other words, the inclusion of the word "physically" denotes that a condition must be offensive to the senses rather than morally or intellectually offensive.

Considering the statutory text, context, and legislative history, we conclude that, to constitute a physically offensive condition under ORS 166.025, an odor must be more than minimally unpleasant but need not be dangerous or harmful.

That conclusion raises another question: Who determines whether a particular odor is offensive? Although some odors are objectively unpleasant—rotten eggs and raw sewage come to mind—others are more subjective in nature. The answer lies in the opening clause of ORS 166.025, which sets out the mental state with which a person must engage in conduct set out in paragraphs (a) through (f) in order to violate the statute. The actor must either intend to cause, or recklessly risk causing, *public* inconvenience, annoyance, or alarm. To cause public inconvenience, annoyance, or alarm, an odor must be objectively offensive—that is, it must be offensive to an ordinary, reasonable person under the circumstances. *See People v. Baker*, 150 Misc 2d 713, 714, 569 NYS 2d 907, 908 (1991) (holding that New York's disorderly conduct statute, which was also drawn from the MPC and is materially identical to ORS 166.025 for present purposes, "imposes an objective standard of public inconvenience, annoyance and alarm as opposed to the subjective standard of private or individual annoyance[.]"); *see also People v. Schenck*, 154 Misc 2d 937, 939, 588 NYS 2d 519, 521 (1992) (addressing a challenge to the sufficiency of the factual allegations in a charging instrument: "If a reasonable person under the circumstances would be offended, annoyed or alarmed by the defendant's conduct, then the information is sufficient.").

Whether a reasonable person would find a particular odor offensive depends on several factors, including the nature of the odor, its intensity, duration, and frequency, whether it is continuous or intermittent, and the circumstances in which it is smelled. No single factor is dispositive. Even if an odor is objectively unpleasant in nature, a reasonable person might not regard a fleeting, faint whiff of the odor as offensive (*i.e.*, an "olfactory assault"), whereas an odor that is very intense and persistent could reasonably be regarded as offensive even if it ordinarily might be considered pleasant—perfume, for example, or pungent spices. Likewise, an odor that is only mildly unpleasant and that dissipates quickly might not be bothersome if it is smelled only occasionally, but a reasonable person could grow weary of it, to the point of finding it offensive, if it occurs frequently. Another pertinent circumstance is the location in which the odor is smelled. A reasonable person might not be offended

by the smell of animal manure in a livestock barn at a county fair but would find the same smell offensive in a restaurant. In short, whether an odor constitutes a physically offensive condition depends on the totality of the circumstances.

In light of the facts of this case—the odor in question is marijuana smoke—another observation is necessary: The odor must be *physically* offensive. That is, the smell itself must be unpleasant. Physical offensiveness is not established by the fact that the odor may be associated with substance abuse or criminal activity. Although a person could be offended as a result of those associations, that offense is moral or intellectual in nature, not physical.

With that understanding in mind, we turn to the ultimate question presented in this case: whether a reasonable magistrate could conclude that Moser's affidavit furnished probable cause to believe that someone had committed disorderly conduct in defendant's residence. More specifically, as framed and limited by defendant's arguments on appeal, the question is whether the facts set out in the affidavit establish that someone in defendant's residence had created a physically offensive condition. In answering that question, we "construe the affidavit in a commonsense, nontechnical and realistic fashion looking at the facts recited and the reasonable inferences that can be drawn from those." *State v. Prince*, 93 Or App 106, 112, 760 P2d 1356, *rev den*, 307 Or 246 (1988); *see also Henderson*, 341 Or at 224-25 (similar).

We begin with the nature of the odor. The affidavit establishes that the odor was that of marijuana smoke. We are not prepared to declare, as the state would have us, that the odor of marijuana smoke is equivalent to the odor of garbage. Indeed, some people undoubtedly find the scent pleasing. Nor can we say, however, that the odor is inoffensive as a matter of law. We could perhaps say with confidence that a fleeting whiff of marijuana smoke would not offend a reasonable person, but as the intensity, duration, or frequency of the odor increases, it stands to reason that it would become objectively offensive at some point, particularly depending on the location in which it is smelled. Accordingly, we conclude that the nature of the odor is a neutral factor in this case.

With regard to the intensity of the odor, the affidavit is nearly silent. Moser stated that he could smell marijuana outside defendant's residence when he arrived the first time, but nothing he said suggested how strong the odor was, such as how far away he was when he initially detected it. Nor did defendant's neighbors indicate how intense the odor had been on any given occasion, either inside or outside their residences. Rather, they testified merely that they could detect it. Thus, the affidavit does not establish that the intensity of the odor was anything more than minimal.

Likewise, the affidavit says almost nothing about how long the odor persisted on any given occasion. Although Moser smelled marijuana the first time he went to the triplex, he did not smell it again when he returned approximately an hour and a quarter later. D told Moser that he "first smelled the odor" around 7:30 p.m., when he called the police the first time, and "again began to smell the odor" when he called the second time, implying that the odor had not persisted the entire time between the two calls. Thus, the affidavit indicates that the odor persisted from the time that D and the others in his residence first smelled the odor until sometime after Moser initially responded, but it does not disclose how long it took Moser to respond or how long he remained at the triplex. Moreover, after D's second call, the odor had dissipated by the time Moser arrived. Accordingly, the affidavit establishes that the odor was more than fleeting on at least one occasion, but, otherwise, there is no indication as to how long the odor persisted on any given occasion.

The affidavit is also unclear regarding the frequency with which the odor occurred. One of defendant's other neighbors told Moser that she smelled marijuana coming from defendant's residence two or three times a week. She did not say how long it had been going on, but her statement implies that it had been, at a minimum, a few weeks.

The final pertinent circumstance that we consider is the location in which the odor was smelled—in and around the homes of defendant's neighbors. One would expect a reasonable person to be less tolerant of unwanted odors when they intrude into the person's home. *Cf. Mauri v. Smith*, 135 Or App 662, 676, 901 P2d 247 (1995), *rev'd in part on other*

*grounds*, 324 Or 476, 929 P2d 307 (1996) ("We speak not infrequently of the sanctity of one's home, as a haven for family. Thus, conduct that is tolerable—or, at least, must be tolerated—on the street, in the market place, or in the work place, may be intolerable at home."). That factor weighs in favor of concluding that the odor was offensive.

To summarize the totality of the circumstances established by Moser's affidavit: In and around their homes, two or three times a week, for at least a few weeks, defendant's neighbors were subjected to an odor that is not inherently unpleasant, that was of an unknown intensity, and that, at least one time, was more than fleeting. Again, the sole question before us—given the limited nature of defendant's arguments on appeal—is whether a reasonable magistrate could conclude, from those facts, that a physically offensive condition probably occurred at defendant's residence. *Castilleja*, 345 Or at 271.

The difficulty in this case is that Moser's affidavit is nearly silent regarding two of the factors that are important to determining whether an odor constitutes a physically offensive condition: the intensity and persistence of the odor. Accordingly, the affidavit provides no information from which a court could conclude that the odor was an "olfactory assault"—more than a mere whiff—that, perhaps only once, did not dissipate immediately. And the absence of information about those factors makes it impossible to assess whether, under the totality of the circumstances, the odor probably was more than minimally unpleasant, such that a reasonable person would find it physically offensive. We conclude, therefore, that no reasonable magistrate could determine that Moser's affidavit established probable cause to believe that the odor coming from defendant's residence constituted a physically offensive condition for purposes of ORS 166.025(1)(f).[3]

Reversed and remanded.

---

[3] We intend no criticism of the judge who reviewed the affidavit and signed the search warrant. Before this opinion issued, our case law provided no guidance on the factors relevant to the determination of whether an odor constitutes a physically offensive condition.