Argued and submitted September 29, 2014, convictions for second-degree
disorderly conduct and interfering with public transportation reversed,
otherwise affirmed August 3, 2016

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JOSE ANTONIO HAWKINS,
*Defendant-Appellant.*

Washington County Circuit Court
D125056M; A153615

380 P3d 979

Thomas W. Kohl, Judge.

John Paul Evans, Deputy Public Defender, argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Elizabeth Daily, Deputy Public Defender, Office of Public Defense Services.

Matthew J. Lysne, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.*

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

.

## ARMSTRONG, P. J.

Defendant appeals a judgment of conviction for public indecency, ORS 163.465; second-degree disorderly conduct, ORS 166.025; and interfering with public transportation, ORS 166.116. He contends that the trial court erred in denying his motions for judgments of acquittal of the latter two crimes because his conduct did not create a physically offensive condition, which the state was required to prove to convict him of those crimes. Defendant does not challenge his conviction for public indecency. We agree with defendant that the trial court erred in denying his motions for judgments of acquittal and, consequently, reverse two of his three convictions.

The facts are undisputed. Defendant was traveling on public transportation during rush hour and told a female passenger that he wished to perform sexual acts with her. Defendant then put his hands in his pants and masturbated. Over the next seven minutes, defendant twice pulled down his pants, exposing his genitals while masturbating. A bystander told defendant to leave the woman alone because defendant was making the woman uncomfortable. Defendant responded by clenching his fists and yelling at the bystander to shut up. The woman got off at the next transit stop. Defendant did as well, although he did not follow the woman when she walked from the stop to her car, which was parked in a nearby parking lot. An onlooker called the police, who found defendant at the stop and arrested him.

The state charged defendant by information with one count of public indecency, two counts of second-degree disorderly conduct, and one count of interfering with public transportation. The first of the disorderly conduct counts alleged that defendant had created a risk of public inconvenience, annoyance, or alarm by creating a physically offensive condition by an act that defendant was not licensed or privileged to do. The second of those counts alleged that defendant had created a risk of public inconvenience, annoyance, or alarm by engaging in tumultuous behavior. The count charging defendant with interfering with public transportation alleged that he had committed that crime by engaging in second-degree disorderly conduct while on

a public transit vehicle. Defendant elected to try the case to the court.

At the close of the case, defendant argued to the trial court that it should acquit him of the first disorderly conduct count because no evidence had been presented from which a factfinder could find that he had created a physically offensive condition. We treat defendant's closing argument on this and the other count at issue on appeal as a motion for a judgment of acquittal.[1] Defendant further contended that, for reasons not relevant to this appeal, the trial court should acquit him of the second disorderly conduct count and, therefore, that the court had to acquit him of interfering with public transportation, because the latter crime included as an element that defendant had engaged in second-degree disorderly conduct while on a public transit vehicle. The trial court convicted defendant of public indecency, of the first of the disorderly conduct counts—*viz.*, the count based on defendant's creation of a physically offensive condition—and of interfering with public transportation, but acquitted him of the second of the disorderly conduct counts. Defendant appeals the resulting judgment of conviction.

We begin with the applicable statutes. ORS 166.025 establishes the crime of second-degree disorderly conduct. It provides, as relevant:

"(1)   A person commits the crime of disorderly conduct in the second degree if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person:

"* * * * *

"(f)   Creates a hazardous or physically offensive condition by any act which the person is not licensed or privileged to do."

In turn, ORS 166.116 establishes the crime of interfering with public transportation. It provides, as relevant:

---

[1] In a case tried to the court, we generally treat a defendant's contention in closing argument that there was insufficient evidence to convict the defendant of a crime as a motion for a judgment of acquittal. *See, e.g., State v. Gonzalez-Valenzuela*, 358 Or 451, 454 n 1, 365 P3d 116 (2015). Hence, we will refer throughout this opinion to the rulings that defendant challenges as rulings that denied motions for judgments of acquittal.

"(1)    A person commits the crime of interfering with public transportation if the person:

"* * * * *

"(c)    While in or on a public transit vehicle or public transit station, engages in disorderly conduct in the second degree as defined in ORS 166.025[.]"

Defendant contends that the evidence was insufficient to support a finding that he had created a physically offensive condition and, consequently, that the trial court erred in denying his motions for judgments of acquittal for the crimes of disorderly conduct and interfering with public transportation. He asserts that a physically offensive condition under ORS 166.025(1)(f) is one that causes the sensory organs of a person exposed to it to experience unpleasant physical sensations. Applying that understanding of the statute to the facts here, defendant contends that his conduct did not create such a condition because the sight or sound of his conduct would not cause unpleasant sensations in the eyes or other sensory organs of people exposed to it. The state responds that, properly understood, the statute reaches conduct that, because it is morally or intellectually offensive, creates unpleasant physical sensations in people exposed to it. Therefore, because a person witnessing defendant's actions would have found them to be morally and intellectually offensive and would consequently have experienced unpleasant physical sensations, such as nausea and anxiety, defendant's conduct came within the statute's prohibition.

We rejected in *State v. Lang*, 273 Or App 113, 359 P3d 349 (2015)—a case that we decided after the submission of this case—the expansive reading of ORS 166.025(1)(f) that the state proposes here. In *Lang*, a police officer applied for a warrant to search the defendant's apartment for evidence of second-degree disorderly conduct, relying on statements by the defendant's neighbors that they had repeatedly smelled marijuana emanating from the apartment and on the officer's experience smelling marijuana emanating from the apartment earlier that day. The warrant was issued and executed. The police found evidence of criminal activity, and the defendant was convicted of criminal mischief based on

that evidence. The defendant appealed, contending that the trial court should have suppressed the evidence obtained under the search warrant because the application for the warrant lacked evidence from which a magistrate could have found that the marijuana odor coming from the defendant's apartment had created a physically offensive condition.

We began our analysis by noting that "the inclusion of the word 'physically' denotes that a condition must be offensive *to the senses rather than morally or intellectually offensive.*" 273 Or App at 121 (emphasis added). Whether a condition is physically offensive is determined from the vantage of "an ordinary, reasonable person under the circumstances." *Id.* at 122. Applying that standard, we concluded that the search warrant affidavit had failed to establish probable cause to believe that evidence of disorderly conduct would be found in the apartment, because the affidavit did not contain facts that would support a finding that a reasonable person exposed to the marijuana odor would have experienced more than minimally unpleasant sensory effects.

The state's expansive view of ORS 166.025(1)(f) conflicts with our decision in *Lang*. We held in *Lang* that ORS 166.025(1)(f) is addressed only to conditions whose sensory features—as distinguished from their moral, intellectual, or social features—would cause a reasonable person exposed to them to experience unpleasant sensory effects. 273 Or App at 121-22. The statute does not reach conditions that are offensive only because of their moral, intellectual, or social content, even if the conditions might otherwise cause a reasonable person exposed to them to experience unpleasant physical, as distinguished from sensory, effects.

The legislative history of ORS 166.025(1)(f) supports our construction of the statute in *Lang*. ORS 166.025(1)(f) was enacted as part of the 1970 Criminal Code Revision, which was developed by the Criminal Law Revision Commission. *See* Or Laws 1971, ch 743, § 220. The commission stated in its minutes that meat-processing plants that emit foul odors would create physically offensive conditions of the type proscribed by the statute, albeit lawfully if the plants had been given permits to operate. *See* Minutes, Criminal Law Revision Commission, Jan 10, 1970, 26-27. Likewise,

the commission stated in its commentary that the provision was intended to encompass "the use of stink bombs in public places." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 220, 214 (July 1970). All of the conditions identified by the commission have sensory features—smells—that would cause a reasonable person exposed to them to experience unpleasant sensory effects. In sum, the commission's discussion of the provision that became ORS 166.025(1)(f) supports our conclusion that the statute was intended to apply to conditions whose sensory features cause people exposed to them to experience unpleasant sensory effects.

With that understanding of the statute, we turn to whether the trial court erred in denying defendant's motions for judgments of acquittal. We will affirm a trial court's denial of a motion for a judgment of acquittal if a rational factfinder, viewing the evidence in the light most favorable to the state, could have found that the state had proven the essential elements of the charged crimes beyond a reasonable doubt. *See State v. Bivins*, 191 Or App 460, 462, 83 P3d 379 (2004). Here, that requires us to determine whether a rational factfinder could find that the sensory features of defendant's conduct would cause a reasonable person exposed to them to experience unpleasant sensory effects.

We conclude that the state did not meet that burden. Defendant's actions had two sensory features: images and sound. However, on the record in this case, the sensory features of defendant's conduct would not cause a reasonable person exposed to them to experience unpleasant *sensory* effects, which are the effects to which ORS 166.025(1)(f) is addressed. We do not doubt that a reasonable person would find defendant's action's to be morally and socially offensive, which could cause a reasonable person subjected to them while traveling with defendant on public transportation to experience unpleasant physical effects, such as disgust or anxiety. That, presumably, is one of several reasons that led the legislature to criminalize public indecency. But defendant does not challenge his conviction for public indecency. Rather, he challenges only his conviction under ORS 166.025(1)(f) for creating a physically offensive condition.

A reasonable factfinder could not convict defendant under ORS 166.025(1)(f) of second-degree disorderly conduct for his conduct in this case. It follows that a reasonable factfinder likewise could not convict him of interfering with public transportation, because engaging in conduct constituting second-degree disorderly conduct is an element of that crime as charged in this case.[2] The trial court therefore erred in denying defendant's motions for judgments of acquittal of second-degree disorderly conduct and interfering with public transportation.

Convictions for second-degree disorderly conduct and interfering with public transportation reversed; otherwise affirmed.

---

[2] The legislature, should it desire to do so, could amend ORS 166.116 to add public indecency as a crime that constitutes interfering with public transportation if committed in a public transit vehicle or station.